# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-2103

_____

United States of America

*Plaintiff - Appellee*

v.

Lekemia D'Andre Caster, also known as Jeffrey Lamon Carter, also known as Cash

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of North Dakota - Eastern

_____

Submitted: February 13, 2026
Filed: July 10, 2026

_____

Before LOKEN, LAVENSKI R. SMITH, and STRAS, Circuit Judges.

_____

LAVENSKI R. SMITH, Circuit Judge.

Lekemia D'Andre Caster pleaded guilty pursuant to a written plea agreement to conspiracy to possess with intent to distribute and to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A). The plea agreement included an appeal waiver. Caster subsequently moved to withdraw his guilty plea, raising Federal Rule of Criminal Procedure 11 errors related to the

drug quantity element of the offense. The district court[1] denied the motion. On appeal, Caster argues that the district court erred in denying his motion to withdraw his guilty plea because there was an insufficient factual basis to support his guilty plea to the drug quantity element of the offense and that he did not enter his plea knowingly and voluntarily. Upon review, we conclude that Caster knowingly and voluntarily entered his plea agreement. The guilty plea waiver is valid. Consequently, we enforce the appeal waiver and dismiss the appeal.

## I. *Background*

Caster was charged in a superseding indictment with conspiracy "to possess with intent to distribute and distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine," in violation of 21 U.S.C. §§ 846 (conspiracy), 841(a)(1) (possession with intent to distribute and distribute), 841(b)(1)(A) (10-year mandatory minimum for 500 grams or more of methamphetamine mixture). R. Doc. 46, at 1; *see also id.* at 3 ("It was a part of said conspiracy that the defendants and others would and did possess with intent to distribute and did distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine . . . ."). Caster entered into a written plea agreement with the government in which Caster agreed to plead guilty to the conspiracy count. Caster agreed that he "fully underst[ood] the nature and elements of the charged crime." R. Doc. 84 ¶ 3. He also acknowledged that he had "discussed the case and reviewed the Plea Agreement" with his counsel. *Id.* ¶ 25. He agreed to "plead guilty because [he] is in fact guilty of the charge." *Id.* ¶ 6.

The factual basis of the plea agreement mirrored the superseding indictment's statement of overt acts in furtherance of the conspiracy, stating:

> From on or before February 11, 2021, until on or about March 26, 2021, in the Districts of North Dakota, Minnesota, and elsewhere, LEKEMIA D'ANDRE CASTER a/k/a JEFFREY LAMON CARTER, a/k/a

---

[1]The Honorable Peter D. Welte, Chief Judge, United States District Court for the District of North Dakota.

CASH, did knowingly and intentionally combine, conspire, confederate, and agree together and with others, both known and unknown to the grand jury, to possess with intent to distribute and distribute *500 grams or more* of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, *in violation of Title 21, United States Code, Sections 841(a)(l) and 841(b)(l)(A)*, and Title 18, United States Code, Section 2. In furtherance of this conspiracy and to effect and accomplish the objects of it, one or more of the conspirators committed the following overt acts: 1. It was a part of said conspiracy that the defendants and others would and did possess with intent to distribute and did distribute *500 grams or more* of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, within the states of North Dakota, Minnesota, and elsewhere; 2. It was further a part of said conspiracy that the defendants and others would and did attempt to conceal their activities; 3. It was further a part of said conspiracy that the defendants and others would and did use telecommunication facilities; 4. It was further a part of said conspiracy that the defendants and others would and did use United States currency in their drug transactions; 5. It was further a part of said conspiracy that on or about February 12, 2021, in Fargo, North Dakota, a codefendant did possess with intent to distribute approximately *750 grams* of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance; 6. It was further a part of said conspiracy that on or about March 26, 2021, in the Districts of Minnesota and North Dakota, LEKEMIA D' ANDRE CASTER, a/k/a JEFFREY LAMON CARTER, a/k/a CASH, and a codefendant did possess with intent to distribute approximately *650 grams* of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance; and 7. It was further part of said conspiracy that on or about March 26, 2021, in the Districts of North Dakota and Minnesota, LEKEMIA D' ANDRE CASTER, a/k/a JEFFREY LAMON CARTER, a/k/a CASH, did possess with intent to distribute approximately *17 grams* of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance; In violation of Title 21, United States Code, Section 846; *Pinkerton v. United States*, 328 U.S. 640 (1946).

*Id.* ¶ 6 (emphases added); *see also* R. Doc. 46, at 3. Notably, Caster "reserve[d] the right to object to portions of the factual basis in this paragraph to the extent it contain[ed] a recitation of the indictment language and may contain overt acts he was not responsible for and/or were not reasonably foreseeable to [him] in relation to his conduct." R. Doc. 84 ¶ 6.

In his plea agreement Caster agreed to "waive[] [his] right to seek to withdraw [his] plea of guilty, pursuant to Federal Rules of Criminal Procedure 11(d), once the plea has been entered in accordance with this agreement." *Id.* ¶ 22. The plea agreement advised Caster that "[t]he appellate court will enforce such waivers." *Id.* Caster "agree[d] that any attempt to withdraw [his] plea will be denied and any appeal of such denial should be dismissed." *Id.*

Caster's plea agreement also contained the following appeal waiver:

> Defendant acknowledges having been advised by counsel of Defendant's rights to appeal the conviction or sentence in this case, including the appeal right conferred by 18 U.S.C. § 3742, and to challenge the conviction or sentence collaterally through post-conviction proceedings, including proceedings under 28 U.S.C. § 2255. Defendant understands these rights, and in exchange for the concessions made by the United States in this plea agreement, Defendant hereby knowingly and voluntarily waives these rights, except as specifically reserved herein. Defendant's waiver of these rights includes, but is not limited to, a waiver of all rights to appeal or to collaterally attack: Defendant's conviction or sentence; all non-jurisdictional issues; any assessment, restitution or forfeiture order; the constitutionality of the applicable guidelines; and the constitutionality of the statute(s) to which Defendant is pleading guilty or under which Defendant is sentenced, or to argue that the admitted conduct does not fall within the scope of the statute(s). Defendant reserves the right to appeal a sentence of imprisonment imposed above the upper end of the applicable guidelines range and the right to appeal or to collaterally attack the conviction or sentence based on a claim of ineffective assistance of counsel that challenges the validity of the guilty plea or this waiver.

*Id.* ¶ 21.

At the change-of-plea hearing, the district court reviewed the superseding indictment with Caster, advising him that he, Daniel Martinez, and Jaquin Raul Crespo-Pastor were charged "with a conspiracy to possess with intent to distribute and distribute a controlled substance." R. Doc. 115, at 5. Specifically, the superseding indictment "charge[d] a drug conspiracy between February 11 and March 26th of 2021 in the Districts of North Dakota and Minnesota, and the drug conspiracy pertains to *500 grams or more* of a mixture and substance containing a detectable amount of methamphetamine." *Id.* (emphasis added). Caster waived the district court's complete reading of the superseding indictment.

The district court then asked Caster whether he understood the plea agreement, the consequences of pleading guilty, and the applicable minimum and maximum sentences. During its colloquy with Caster, the district court asked Caster whether he had "reviewed paragraph 6 with [his] lawyer," explaining that "[p]aragraph 6 . . . is a factual basis that would be meant in this case to sustain the essential elements required to be proved at trial." *Id.* at 7–8. Caster responded, "Yes." *Id.* at 8. The court then inquired whether Caster had "any questions for the [c]ourt" about the factual basis, and Caster responded, "Not at this moment, no." *Id.* The court explained to Caster that after he entered his guilty plea, the court would "incorporate paragraph 6 by reference into the record." *Id.* The court would then afford Caster the opportunity to "pose any objections that [he] ha[s] to the factual basis." *Id.*

The court subsequently discussed with Caster the appeal waiver contained in the plea agreement. The following exchange occurred:

> THE COURT: Okay. You're surrendering and waiving your right to appeal in this matter. That means that except for two instances, one, if the [c]ourt imposes a sentence above the upper end of the [c]ourt-determined guideline range or, two, a claim of ineffective

assistance of counsel, except those two instances you're generally waiving your right to appeal. Is that your understanding?

> THE DEFENDANT: Yes, Your Honor.

> THE COURT: And you've reviewed the appeal waiver with [defense counsel]?

> THE DEFENDANT: Yes.

> THE COURT: And you understand that an appeal waiver is very common in federal Plea Agreements?

> THE DEFENDANT: Yes.

> THE COURT: Okay. Have you read and do you understand this Plea Agreement, Mr. Caster?

> THE DEFENDANT: Yes, Your Honor.

*Id.* at 15–16. The court then asked Caster whether the plea agreement "represent[ed] [his] full understanding with the United States." *Id.* at 16. Caster answered, "Yes." *Id.* The court also asked Caster whether "any other promises or assurances [had] been made in order to get [Caster] to plead guilty" and whether anyone had "threatened [Caster] to make [him] plead guilty." *Id.* Caster answered "[n]o" to both questions. *Id.* Caster also confirmed that he had no questions for the court about his rights or the plea agreement and was ready to plead guilty.

After Caster pleaded guilty, the court permitted the government to supplement the factual basis, explaining to Caster that "[i]t's important to have a factual basis so that the essential elements of that charge are met." *Id.* at 17. The government then supplemented the factual basis as follows:

> In late 2020 and into early 2021 there were several arrests and search warrants conducted, interviews conducted, small methamphetamine seizures that led law enforcement to determine that a person by the

name of Daniel Martinez was going down to the Twin Cities, getting pound quantities of methamphetamine, bringing them back up to the Fargo-Moorhead-West Fargo area for distribution. That led to a tracking warrant being put on Mr. Martinez's vehicle, a stash house of his being raided.

Eventually in March of 2021 Mr. Martinez and Mr. Caster went down to the Twin Cities, picked up a dealer quantity of methamphetamine. In this case it was over *650 grams*. Law enforcement tried to stop them as they came back into Fargo and eventually arrested Mr. Caster who was the driver of the vehicle as well as Mr. Martinez. Mr. Martinez had a backpack and in that backpack as I alluded to earlier was well over *650 grams of methamphetamine*. A search of the cellphone seized in the investigation showed that Mr. Caster was engaged in a conspiracy and was aware of what was going on when he drove Mr. Martinez down to The Cities to pick up that methamphetamine for distribution.

I discussed earlier a stash house and some seizures of methamphetamine in the investigation. Paragraph 6 notes Mr. Caster reserves the right to object in that that—some of those seizures or those seizures were not reasonably foreseeable to him. I anticipate he's going to make that objection now and I don't have anything to add on top of that.

*Id.* at 18–19 (emphases added).

In response, Caster's counsel lodged an objection; the following exchange occurred between defense counsel and the court concerning the objection:

[DEFENSE COUNSEL]: Thank you, Your Honor. With respect to paragraph 6, we did reserve the right to object to the Indictment language recitation here involving co-defendants. *In particular with the Crespo-Pastor co-defendant there was a seizure there of 750 grams that's recited in the paragraph 6.* We specifically object to my client knowing about that or having that being reasonably foreseeable. *My client also would like me to object to the drugs with respect to Martinez to the extent only that we're talking about quantity.* He certainly was

the driver. He did transport Mr. Martinez back and forth between this area and the Twin Cities, Your Honor, and he did have some information about what was going on but the extent and quantities to which he asserts he did not know exactly what Mr. Martinez had. So to the extent necessary that would be my objection. Thank you.

THE COURT: To some extent federal court is a peculiar forum in these cases because really it isn't until the Presentence Investigation Report [PSR] is done and you get all of the offense conduct that all of these facts can be fully hashed out and argued.

*What I do want to establish for the record . . . is that you and your client are acknowledging that there is a sufficient factual basis to sustain the essential elements of the crime to which he is pleading guilty; is that accurate?*

[DEFENSE COUNSEL]: *That is accurate, Your Honor. So, if I may, perhaps it procedurally works best to simply reserve ruling on the objections until the PSI and sentencing.*

THE COURT: Correct.

[DEFENSE COUNSEL]: Thank you.

THE COURT: Thank you. *So given that there is an acknowledgment and an acquiescence that there is a factual basis that is sufficient to sustain—that there's a factual basis containing each of the essential elements of the offense, the Court will withhold ruling on the objections until sentencing.*

Mr. Caster, it is the finding of the Court that you are fully competent and you are fully capable of entering an informed plea in this matter and it's the finding of the Court, Mr. Caster, that you are aware of the nature of the charges and of the consequences of pleading guilty. *It is the finding of the Court that your plea is a knowing and a voluntary plea and it is supported by an independent basis in fact containing each of the essential elements of the offense charged.* Your plea is accepted, Mr. Caster. You are now adjudged as guilty of this offense.

*Id.* at 19–21 (emphases added).

Eleven months after pleading guilty, and represented by new counsel, Caster moved to withdraw his guilty plea. Caster asserted "three separate violations of the Rule 11 requirements." R. Doc. 127, at 3. The alleged violations were that (1) the district court failed to establish an adequate factual basis for the drug quantity element of the offense before accepting Caster's guilty plea; (2) Caster did not understand the nature of the offense to which he pleaded guilty based on the district court's failure to establish an adequate factual basis for the drug quantity element, and (3) his guilty plea was not voluntary because he did not understand the nature of the offense to which he pleaded guilty.

The district court denied Caster's motion to withdraw his guilty plea. First, the district court determined that "there was an adequate factual basis with respect to drug quantity." R. Doc. 133, at 5. "Caster was charged and pled guilty to a violation of § 841(b)(1)(A), which applies to conspiracies involving, among other things, 500 grams or more of a mixture containing methamphetamine." *Id.* at 4. Thus, establishing Caster's involvement in the conspiracy to distribute 500 or more grams of methamphetamine mixture would be an essential element of the offense. The court noted "two instances" in the factual basis of the plea agreement "involving drug quantities *in excess of* 500 grams of a mixture containing methamphetamine." *Id.* at 5 (emphasis added) (citing R. Doc. 84, at 2–3).

Notably, the court cited defense counsel's acknowledgment at the change-of-plea hearing that "there [was] a sufficient factual basis to sustain the essential elements of the crime to which [Caster] [was] pleading guilty" despite counsel's assertion that "those exact drug quantities [in excess of 500 grams] were not reasonably foreseeable to Caster." *Id.* (quoting R. Doc. 115, at 20). The court also cited counsel's agreement to the court "reserv[ing] [a] ruling on the objection until the [PSR] and sentencing." *Id.* (second and third alterations in original) (quoting R. Doc. 115, at 20). The court "interpret[ed] defense counsel's statements as acknowledging a factual basis for *at least 500 grams* of a mixture containing methamphetamine but disputing any findings establishing a *higher amount.*" *Id.*

(emphases added). The court supported its interpretation with citations to the change-of-plea hearing in which Caster "was informed . . . that the superseding indictment charged a drug conspiracy involving '500 grams or more of a mixture . . . containing a detectable amount of methamphetamine'" and was informed of "the applicable statutory minimum and maximum under § 841(b)(1)(A)." *Id.* (quoting R. Doc. 115, at 5).

Second, the court concluded that "Caster was aware of the nature of the offense to which he pled guilty." *Id.* at 6. In support of its conclusion, the court noted that "Caster was represented by counsel, [he] signed a plea agreement that included the essential elements of the offense, he was informed of the offense at the plea hearing, and the United States provided a detailed supplemental factual basis that included the essential elements." *Id.*

Third, the district court found that because Caster understood the nature of the offense, his plea was voluntary. Furthermore, when the court asked Caster "whether any threats or promises were made to induce him to plead guilty, . . . he responded, 'No, Your Honor.'" *Id.* at 7 (quoting R. Doc. 115, at 16).

Fourth, even though the district court concluded that Caster failed to establish a "fair and just reason for withdrawal of [his] guilty plea," it nonetheless addressed "whether the defendant asserts his innocence of the charge, the length of time between the guilty plea and the motion to withdraw it, and whether the government will be prejudiced if the court grants the motion." *Id.* (quoting *United States v. Nichols*, 986 F.2d 1199, 1201 (8th Cir. 1993)). According to the court, none of those factors were satisfied: (1) Caster did not "provide additional detail about his claim of innocence"; (2) he "moved to withdraw his guilty eleven months after the fact, and his guilty plea is now over a year old"; and (3) the "substantial delay weigh[ed] against allowing him to withdraw his plea considering both the length of the time between his guilty plea and motion to withdraw and potential prejudice to the United States." *Id.* at 7–8.

Caster proceeded to sentencing. Prior to sentencing, the PSR was prepared that outlined the offense conduct, including the drug quantities. It described how a search of Martinez's stash house in February 2021 uncovered 778 grams of methamphetamine. R. Doc. 171 ¶ 8 ("During the search, law enforcement seized . . . multiple plastic baggies containing approximately 734 grams of methamphetamine [and] two plastic bags containing 44 grams of methamphetamine . . . ."). Furthermore, when officers arrested Caster and Martinez, they "seized 672 grams of methamphetamine in a backpack that was located on Martinez." *Id.* ¶ 10. Officers also seized "[a]n additional 17 grams of methamphetamine" "later determined to be Caster's." *Id.* The PSR also stated, "Per the Plea Agreement, the parties agree the defendant's involvement in this drug conspiracy involved the distribution of between 500 grams to 1.5 kilograms of methamphetamine. *The discovery supports this accounting, and these amounts will be used for guideline purposes.*" *Id.* ¶ 11 (emphasis added). Caster lodged no objections to the PSR.

At sentencing, the district court first asked whether there were any "unresolved objections" to the PSR. R. Doc. 185, at 15. Both Caster's counsel and the government said they had no objections. Caster himself objected to two criminal history points, but the court overruled the objection because it had no effect on Caster's criminal history category. The district court calculated the Guidelines range as 262 to 327 months, to which neither party objected. The district court adopted the undisputed portions of the PSR as findings of fact. The government recommended a sentence of 174 months. Caster requested a four-level minor role reduction in the offense level. Caster's counsel acknowledged that Caster drove Martinez to secure drugs two times. Caster then requested an 84-month sentence. The district court denied the minor role adjustment. In his allocution, Caster did not comment on the drug quantity but rather focused on his career offender designation. After considering the sentencing factors, the district court sentenced Caster to a below Guidelines sentence of 200 months.

## II. *Discussion*

On appeal, Caster argues that the district court erred in denying his motion to withdraw his guilty plea because there was an insufficient factual basis to support his guilty plea to the drug quantity element of the offense. In response, the government argues that Caster's claims are precluded by the appeal waiver, which necessitates dismissal of his appeal. We agree.

Caster "enter[ed] into a plea agreement that waives [his] appellate rights." *United States v. Andis*, 333 F.3d 886, 889 (8th Cir. 2003) (en banc). But we have "imposed limits on the use of these waivers." *Id.* Before enforcing an appeal waiver, "we must confirm that the appeal falls within the scope of the waiver and that both the waiver and plea agreement were entered into knowingly and voluntarily." *Id.* at 889–90. But even if we find these conditions satisfied, "we will not enforce a waiver where to do so would result in a miscarriage of justice." *Id.* at 890.

Caster acknowledges that his plea agreement contains an appeal waiver. He also does not contest that his appeal falls within the scope of the waiver. *See* R. Doc. 84 ¶ 21 ("Defendant's waiver of these rights includes, but is not limited to, a waiver of all rights to appeal or to collaterally attack . . . *all non-jurisdictional issues . . . .*"); *see also United States v. Bell*, No. 24-1703, 2025 WL 1983882 (8th Cir. July 17, 2025) (unpublished per curiam) (determining that defendant's argument "that his guilty pleas lacked adequate factual bases" constituted a challenge "to non-jurisdictional and non-sentencing issues fall[ing] within the scope of the waiver"). Instead, he argues that we should not enforce the appeal waiver because he did not enter the plea agreement knowingly and voluntarily and enforcing the appeal waiver would result in a miscarriage of justice.

### A. *Knowingly and Voluntarily*

"A defendant must enter into a plea agreement and waiver knowingly and voluntarily for these agreements to be valid. . . . The requirement that a plea agreement and waiver be entered into knowingly and voluntarily applies to each term of an agreement." *Andis*, 333 F.3d at 890. This means, for example, that even if "a

-12-

defendant . . . knowingly and voluntarily enter[ed] into a plea agreement waiving the right to a jury trial," that defendant may "nonetheless [have] faile[d] to knowingly and voluntarily waive[] other rights—including appellate rights." *Id.* We have recognized that "[t]here are many ways in which an agreement, or aspects of an agreement, could be entered into without the requisite knowledge or voluntariness," such as "an agreement entered into upon the ineffective assistance of counsel or undue coercion." *Id.* (citation modified).

But "a district court can help ensure that a plea agreement and corresponding waiver are entered into knowingly and voluntarily [by] properly question[ing] a defendant about his or her decision to enter that agreement and waive the right to appeal." *Id.* at 890–91. The district court must "correctly address any waiver in a plea agreement and ascertain that a defendant has knowingly and voluntarily waived the rights addressed by the agreement." *Id.* at 891.

Caster argues that we should not enforce the appeal waiver because he failed to knowingly and voluntarily enter into the plea agreement. He asserts that he did not understand the drug quantity element—one of the essential elements of the charge. According to Caster, the plea agreement contains "conflicting provisions" that render it ambiguous. Appellant's Br. 23. His argument can be summarized as follows: Caster was charged with conspiracy to possess with intent to distribute and distribute a controlled substance, in violation 21 U.S.C. § 846. Caster's plea agreement states that Caster "acknowledges the Superseding Indictment charges a violation of Title 21, United States Code, Section 846." R. Doc. 84 ¶ 1. It also provides that Caster "fully understands the nature and elements of the charged crime." *Id.* ¶ 3. But § 846 does "not contain the drug quantity element and the plea agreement did not include Caster's admission to facts establishing 500 grams or more of methamphetamine were attributable to him." Appellant's Br. 23. Caster "reserved the right to object to [¶ 6 of the plea agreement] regarding acts he was not responsible for or were not reasonably foreseeable to him." *Id.* Based on these factual assertions, he maintains that the plea agreement is ambiguous: "[T]he only statute cited as the charge did not contain the drug quantity element and the plea agreement

did not include [his] admission to facts establishing 500 grams or more of methamphetamine were attributable to him." *Id.* This ambiguity, he asserts, means that he could not have knowingly and voluntarily entered the plea agreement and appeal waiver.

Having reviewed the record, we conclude that the district court correctly concluded that Caster knowingly and voluntarily entered an unambiguous plea agreement and appeal waiver. In fact, the record reflects his assurance of understanding of the drug quantity amount attributable to him. The unambiguous plea agreement and transcript of the change-of-plea hearing show that the only dispute was whether Caster was responsible for the specific amounts of 650 and 750 grams of methamphetamine as "reasonably foreseeable" to him; he did not contest that he was responsible for *at least* 500 grams of methamphetamine as set forth in the superseding indictment and plea agreement. *See* R. Doc. 115, at 19–20.

First, the district court advised Caster of the drug quantity at issue. It read the charge at the change-of-plea hearing and expressly stated that the drug quantity at issue was "500 grams or more" of methamphetamine. *Id.* at 5. The district court's statement was consistent with the superseding indictment and the factual basis of the plea agreement. The superseding indictment charged Caster with violating § 846 for conspiring with his codefendants to possess with intent to distribute and to distribute "500 grams or more of . . . methamphetamine . . . in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)." R. Doc. 46, at 1; *see also id.* at 3. In the plea agreement, Caster acknowledged that he was charged with violating § 846, R. Doc. 84 ¶ 1, and the plea agreement's factual basis mirrored the superseding indictment's drug-quantity amount, stating that Caster conspired to "possess with intent to distribute and did distribute 500 grams . . . of

methamphetamine," *id.* ¶ 6.[2] "As the agreement itself states,[3] and as the change-of-plea hearing confirmed,[4] [Caster] reviewed the proposed agreement with counsel." *United States v. Williams*, 81 F.4th 835, 839 (8th Cir. 2023).

Second, the district court inquired into Caster's understanding of the factual basis for his guilty plea, which necessarily included the drug quantity element of 500 grams of methamphetamine. The district court asked Caster whether he had "reviewed paragraph 6 with [his] lawyer," explaining that "[p]aragraph 6 . . . is a factual basis that would be meant in this case to sustain the essential elements required to be proved at trial." R. Doc. 115, at 7–8. Caster responded, "Yes." *Id.* at 8. The court then inquired whether Caster had "any questions for the [c]ourt about [the factual basis]," and Caster responded, "Not at this moment, no." *Id.* The court explained to Caster that after he entered his guilty plea, the court would "incorporate paragraph 6 by reference into the record." *Id.* The court would then afford Caster the opportunity to "pose any objections that [he] ha[s] to the factual basis," which was consistent with Caster's reservation of rights in the plea agreement. *Id.* Prior to pleading guilty, Caster confirmed that he had read and understood the plea agreement and had no questions for the court.

Third, consistent with Caster's reservation of rights in the plea agreement, *see* R. Doc. 84 ¶ 6, Caster's counsel lodged an objection—after the government supplemented the factual basis—to the specific drug quantity amounts of 650 and 750 grams being reasonably foreseeable to Caster, R. Doc. 115, at 19–20. Upon

_____

[2]We reject Caster's argument that there are conflicting provisions in the plea agreement. As the government aptly explains, "Caster pleaded guilty to a conspiracy under 21 U.S.C. § 846, which had as its object a violation of 21 U.S.C. § 841(a)(1) and whose penalties were found in 21 U.S.C. § 841(b)(1)(A). Paragraphs 1 and 6 accurately convey this charge." Appellee's Br. 59.

[3]R. Doc. 84 ¶ 25.

[4]R. Doc. 115, at 7–8.

inquiry by the court, counsel confirmed that Caster was "acknowledging that there is a sufficient factual basis to sustain the essential elements of the crime," which necessarily included that Caster was responsible for at least 500 grams of methamphetamine. *Id.* at 20. Caster's counsel agreed that the specific amounts attributable to Caster for purposes of calculating his Guidelines sentence would be decided after preparation of the PSR. *See Williams*, 81 F.4th at 839 ("He acknowledged that sentencing-related issues would be ironed out later."). As the district court concluded, a reasonable interpretation of defense counsel's statement is that Caster was "acknowledging a factual basis for at least 500 grams of a mixture containing methamphetamine but disputing any findings establishing a higher amount." R. Doc. 133, at 5. The court did not inquire of Caster whether he agreed with counsel's representation; however, the court had *already* confirmed with Caster that Caster had reviewed the factual basis for his plea with counsel, *see* R. Doc. 115, at 7–8, and that Caster had read and understood the plea agreement.

Fourth, "the record reflects that [Caster] understood the significance of pleading guilty and waiving his appellate rights. The district court thoroughly questioned him about his understanding and gave him several chances to refuse going forward with the change of plea." *Williams*, 81 F.4th at 839. The plea agreement, which Caster reviewed with counsel, acknowledged that Caster "fully underst[ood] the nature and elements of the charged crime," R. Doc. 84 ¶ 3, as well as "all provisions of the Plea Agreement," *id.* ¶ 25. At the change-of-plea hearing, Caster indicated his understanding that he would have the opportunity to "pose any objections that [he] ha[d] to the factual basis." R. Doc. 115, at 8 (answering "[y]es"). Then, after the district court reviewed with Caster all of his constitutional and trial rights, the district court inquired whether Caster (1) understood that "by pleading guilty [he was] surrendering those rights"; (2) "inten[ded] to plead guilty and to surrender those rights"; (3) "ma[de] that decision after consulting with [defense counsel]"; (4) made the decision independently; and (5) intended to "plead[] guilty because [he was] in fact guilty of this offense." *Id.* at 10–11. Caster answered "[y]es" to all of those questions. *Id.*

Finally, the record shows that the district court reviewed the appeal-waiver provision with Caster. Caster indicated he understood that provision and confirmed that he had reviewed it with counsel. Caster further confirmed that he was entering the plea agreement voluntarily. *See Williams*, 81 F.4th at 839 ("Finally, after the court reviewed the appeal-waiver provisions, Williams said the plea agreement was in his best interest. We take him at his word.").

## B. *Miscarriage of Justice*

"Assuming that a waiver has been entered into knowingly and voluntarily, we will still refuse to enforce an otherwise valid waiver if to do so would result in a miscarriage of justice." *Andis*, 333 F.3d at 891. We apply the "narrow" "miscarriage-of-justice exception . . . in only limited contexts. We have recognized it for challenges to an illegal sentence, to a sentence that violates the terms of an agreement, and where ineffective assistance of counsel rendered the appeal waiver itself unknowing and involuntary. *None apply here*." *Williams*, 81 F.4th at 840 (emphasis added) (citation modified); *see also Hunter v. United States*, No. 24-1063, slip. op. at 1 (U.S. June 18, 2026) (recognizing the exception in circumstances when enforcing the waiver "would leave in place the kind of egregious error that would bring the judicial system into disrepute"). Caster's sentence is not illegal; his sentence of 200 months is within the statutory range for his offense and even below the guidelines range. *See* R. Doc. 176, at 2. Nor does Caster's sentence violate the terms of the plea agreement; the plea agreement was non-binding, and the government's recommendation was in accordance with the agreement. R. Doc. 84 ¶¶ 5, 17. And Caster did not waive claims of ineffective assistance of counsel; in fact, he reserved these in his appeal waiver. R. Doc. 84 ¶ 21.[5]

---

[5]Caster argues that enforcing his appeal waiver is a miscarriage of justice because he did not understand the drug quantity element. This argument is simply a recapitulation of his argument that we should not enforce the appeal waiver because he did not knowingly and voluntarily enter the plea agreement. Its alternate form has no greater persuasiveness.

### III. *Conclusion*

Accordingly, because the appeal waiver is enforceable, we dismiss the appeal.

_____